# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBINSON,<br><br>Plaintiff,<br><br>v.<br><br>KITT, et al,<br><br>Defendants. | **1:14-cv-01525-DAD-JLT (PC)**<br><br>**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS**<br><br>**(Doc. 30)**<br><br>**21-DAY DEADLINE** |

Plaintiff claims the defendants acted with deliberate indifference to his treatment of his diplopia (double-vision)[1] which presented after surgery to remove nasal polyps.  (*See* Doc. 9.) Defendants Dr. Klang, Dr. Youssef, Dr. Songer, Dr. Patel, and Lewis move the Court to dismiss the action, asserting that Plaintiff's allegations fail to state a claim upon which relief can be granted.  (Doc. 30, MTD.)

Because the Court finds that there Plaintiff's second amended complaint and the responses to his inmate grievances demonstrate the defendants did not violate his Eighth Amendment rights and because the state claims are untimely, the Court recommends the motion be **GRANTED** and this entire action be dismissed.[2]

---

[1] Plaintiff also apparently suffers from cataracts and glaucoma.  However, unless otherwise indicated, all general mention of Plaintiff's eye/vision problems herein pertain solely to his diplopia since it is the basis for his claims.

[2] Though Defendant Dr. Kitts neither filed nor joined in this motion, Plaintiff's allegations against him are also evaluated and, for the reasons discussed herein, are found to be deficient and warrant dismissal of the entire action.

I.      **LEGAL STANDARD**

The Court may dismiss an action under Rule 12(b)(6) if there is a lack of a cognizable legal theory stated or there are insufficient facts alleged to support a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1762 (2012).  To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept well-pled factual allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006); *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000).  The Court liberally construes pleadings of prisoners proceeding *pro se* and any doubt is resolved in the inmate's favor.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

Further, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216-17.  "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.  The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable.  The factual allegations of the complaint need only 'plausibly suggest an entitlement to relief.'"  *Id.* (emphasis in original).  "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations."  *Id.*, quoting *Twombly*, 550 U.S. at 556 (emphasis added in *Starr*).

///

///

1    **III.    DISCUSSION**

2         **A.    Defendants' Motion**

3         Defendants argue that Plaintiff's allegations show that none of the doctors named denied

4    or delayed his medical treatment and that they and Lewis deferred to the treatment plans of the

5    medical specialists.  (Doc. 30, 3:22-9:4.) Further, Defendants assert that this suit was not timely

6    filed after the Victims Compensation and Government Claims Board ("VCGCB") rejected his

7    claim.  (*Id.*, at 9:5-10:2.)

8         **B.    Deliberate Indifference to Serious Medical Needs**

9         To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

10   first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

11   could result in further significant injury or the unnecessary and wanton infliction of pain. Second,

12   the plaintiff must show the defendants' response to the need was deliberately indifferent."

13   *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091,

14   1096 (9th Cir. 2006) (quotation marks omitted)).

15        Where the condition is one that a reasonable doctor would find important and worthy of

16   comment or treatment, it affects the patient's daily activities or it causes chronic or substantial

17   pain, a serious medical need is likely to exist. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.

18   2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

19   *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)) (quotation

20   marks omitted); *Doty v. County of Lassen*, 37 F.3d 540, 546 n.3 (9th Cir. 1994).  Plaintiff's double

21   vision problem that occurred after his nasal polyp removal surgery appears to be a serious

22   medical need.

23        Deliberate indifference is "a state of mind more blameworthy than negligence" and

24   "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*,

25   511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  "Deliberate indifference is a high legal

26   standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir.2004).  "Under this standard, the

27   prison official must not only 'be aware of the facts from which the inference could be drawn that

28   a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at

3

1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.  *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096).  More generally, deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.* (internal quotation marks omitted).

Further, neither a "difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate," nor even medical malpractice suffices for deliberate indifference claims.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1977); *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122-23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health."  *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

### 1. Analysis

Plaintiff asserts that he has not received any surgery or any other medical treatment to correct his double-vision that he claims resulted from the nasal polyp removal. He claims also that his medical grievance on this issue was denied at each level on the grounds that he was currently scheduled for surgery.  (Doc. 36.)  Plaintiff asserts that this dichotomy is evidence that his clams have merit.  (*Id.*)  Plaintiff attached copy of his entire health care appeal on his vision problem, log number WSP HC 13045528 ("HC Appeal"), as an exhibit to his opposition.  (*Id.*, at pp. 9-23.)

In resolving a 12(b)(6) motion, a court's review is generally limited to the operative

4

1    pleading.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v.*

2    *Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-

3    04 (9th Cir. 2006); *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

4    1998).  However, in limited circumstances, the Court may consider documents outside of the

5    operative pleading without converting a motion to dismiss to one for summary judgment.  *U.S. v.*

6    *Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), *see also*, *Durning v. First Boston Corp.*, 815 F.2d

7    1265, 1267 (9th Cir. 1987) (court may consider facts established by exhibits attached to the

8    complaint), *United States v. 14.02 Acres of Land More or Less in Fresno County*, 547 F.3d 943,

9    955 (9th Cir. 2008) (judicial notice), *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388

10   (9th Cir. 1987) (facts which may be judicially noticed), *Mack v. South Bay Beer Distributors*, 798

11   F.2d 1279, 1282 (9th Cir. 1986) (matters of public record, including pleadings, orders, and other

12   papers filed with the court).  Under the doctrine of incorporation by reference, a court may

13   consider a document that was not attached to the pleading if the plaintiff refers to the document

14   extensively or if it forms the basis of the plaintiff's claim.  *Ritchie*, 342 F.3d at 908; *Daniels-Hall*,

15   629 F.3d at 998.

16          While not attached to the Second Amended Complaint ("SAC"), Plaintiff attached all

17   three levels of response to his HC Appeal to the First Amended Complaint ("FAC").  (Doc. 11,

18   pp. 7-4.)  However, it was not clear in the FAC whether Plaintiff attached the HC Appeal as proof

19   of the factual basis for his claims, in dispute of the substantive content, or if merely to show that

20   he had exhausted available administrative remedies prior to filing suit for purposes of § 1915 (g).

21   However, in his opposition to the current motion, Plaintiff clearly relies on the contents of the

22   responses to his HC Appeal at each level for the merits of his claims and asserts that they show

23   "relevant responses of Defendants of Plaintiff's appeal for medical treatment from May 10, 2013

24   when the injury occurred to date not corrected."  (Doc. 36, p. 1.)  Plaintiff points to an itemized

25   chronology of medical care in the Director's Level response to support his assertion that a number

26   of the Defendants are liable because they errantly denied his HC Appeal on the grounds that he

27   was currently scheduled for surgery.  (*Id.*, at p. 5.)  Plaintiff argues that denying his HC Appeal

28   because he was currently scheduled for surgery, coupled with the fact that, as of the date he

1   signed his opposition, no such surgery had been accomplished, shows the merit of his claims.

2   (*Id.*)  Thus, the Court considers the responses to Plaintiff's HC Appeal in evaluating Plaintiff's

3   claims.

4        Plaintiff also requests the Court take judicial notice of the following:  that he was injured

5   by Dr. Kitt "on or about May 10, 2013;" that approximately two years and nine months has lapsed

6   and he has not received corrective surgery; and that each stage of his HC Appeal was denied on

7   the grounds that he was currently scheduled for surgery.  (Doc. 36, p. 5.)  However, "[a] judicially

8   noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known

9   within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

10  determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

11  Evid. 201(b).  The facts which Plaintiff requests be judicially noticed go to the very core of his

12  claims, which are disputed, and are not generally known or capable of accurate and ready

13  determination via an accurate source.  Further, Plaintiff's assertion as to what the various

14  responses to his HC Appeal reveal, as discussed below, is contrary to their actual contents.  Thus,

15  Plaintiff's requests for judicial notice are **DENIED**.

16                    **a.  Dr. Patel**

17       Defendants rely on the allegations in the SAC that on August 2, 2012, Dr. Patel examined

18  his nasal cavity (Doc. 30-1, p. 5, citing Doc. 17 at ¶ 10), and that Dr. Patel "acquiesced in,

19  consented to, and caused injury to and sustained during surgery." (Doc. 17 at ¶ 4)  Likewise,

20  Defendants note that Plaintiff admits the surgery was performed by specialist, Dr. Kitts, during

21  which, Plaintiff claims, he suffered the vision impairment.  They argue that this means Dr. Patel

22  did not act with deliberate indifference. (*id.*, citing Doc. 17 at ¶ 4).

23       Plaintiff's allegations and the responses to his HC Appeal, demonstrate Dr. Patel merely

24  examined Plaintiff and then referred him to Dr. Kitts.  There is nothing in Plaintiff's allegations,

25  arguments, or the responses to his HC Appeal that show a factual basis to support Plaintiff's

26  allegation that Dr. Patel did anything or failed to do anything to cause the injury.  Plaintiff's

27  allegations that Dr. Patel "acquiesced in, consented to, and caused injury" are insufficient to

28  establish the requisite causal connection.  *Iqbal*, 556 U.S. at 678.  Further, as correctly stated by

1   Defendants, Dr. Patel appropriately deferred to the specialist for Plaintiff's treatment.  This alone,

2   does not constitute deliberate indifference.

3                                        **b.  Dr. Kitts**

4          Plaintiff alleges that, after several consultations, on or about May 10, 2013, Dr. Kitts

5   damaged vision in his right eye during surgery to remove nasal polyps such that, shortly

6   thereafter, Plaintiff began experiencing double vision.  (Doc. 17, pp. 2-4.)  While Dr. Kitt's

7   technical performance of the surgical procedure *may have*[3] constituted medical malpractice—

8   which is, at most, what Plaintiff's claim against Dr. Kitts amounts to -- does not support a claim

9   under the Eighth Amendment.  *See Toguchi*, 391 F.3d at 1060; *Broughton v. Cutter Laboratories*,

10  622 F.2d 458, 460 (9th Cir.1980).  Plaintiff's claim against Dr. Kitts for deliberate indifference to

11  his serious medical needs in violation of the Eighth Amendment is thus not cognizable and should

12  be dismissed.

13                                       **c.  Dr. Songer**

14         Plaintiff alleges that, Dr. Songer was a primary care provider ("PCP") who failed to treat

15  his eye condition when, despite being "fully informed" of the damage Plaintiff sustained to his

16  eye during Dr. Kitts' surgery, he gave Plaintiff an eye patch and told Plaintiff his vision would

17  correct itself which resulted in "hiding from Plaintiff injury to his eye."  (Doc. 17, pp. 2-4.)

18  When the responses to Plaintiff's HC Appeals are coupled with the SAC, it appears that,

19  subsequent to Dr. Kitts' surgery on May 10, 2013, Dr. Songer saw Plaintiff multiple times and

20  made multiple referrals to outside specialists for examination and treatment of Plaintiff's eye and

21  vision problems: 1.) On December 5, 2013, Plaintiff was evaluated by an outside ophthalmologist

22  who recommended evaluation by an orbital specialist; 2.) On December 9, 2013, Plaintiff was

23  evaluated by an outside orbital specialize who recommended evaluation by an eye surgeon; 3.)

24  On January 13, 2014, Plaintiff was seen by Dr. Songer who noted that Plaintiff had an upcoming

25  appointment with an outside eye surgeon;  4.) On January 15, 2014, Plaintiff was evaluated by the

26  outside eye surgeon who recommended Plaintiff wear glasses full time and continued to use the

27

28  _____
    [3] The Court does not determine there was, in fact, medical neglect.  The Court is not in a position to make this
    determination.

                                                 7

1  patch to alleviate diplopia; 5.) On January 28, 2014, Plaintiff was again seen by Dr. Songer who

2  discussed with him the recommendations of the eye surgeon and noted Plaintiff was to have a

3  follow-up exam with the outside eye surgeon and ophthalmologist; 6.) On March 11, 2014,

4  Plaintiff was again evaluated by the outside eye surgeon who indicated surgical intervention was

5  not recommended at that time; 7.) On May 6, 2014 and June 3, 2014, Plaintiff was again seen by

6  Dr. Songer who noted that Plaintiff had follow-up appointments pending with outside specialists

7  and his current plan of care was to continue; 8.) On June 24, 2014, Plaintiff was evaluated by the

8  outside eye surgeon who noted he was wearing an eye patch which helped with Plaintiff's

9  diplopia and that Plaintiff had cataract extractions pending; 9.) On July 28, 2014, Plaintiff was

10  examined by the outside ophthalmologist who wanted Plaintiff to return in 6-8 weeks; 10.) On

11  July 30, 2014, when Plaintiff was evaluated by Dr. Songer, they discussed the ophthalmologist's

12  recommendations and Dr. Songer encouraged Plaintiff to keep his upcoming appointments with

13  the different specialists he was seeing at that time; 11.) On July 31, 2014, Plaintiff was evaluated

14  by an outside ophthalmologist regarding his diplopia; 12.) As of August 14, 2014, scheduling of

15  surgical removal of Plaintiff's cataracts was pending and he was told he would be notified when

16  his appointment date "approached."  (Doc. 36, pp. 22-23.)

17      As Defendants' point out, this shows that Plaintiff's allegations that he should have been

18  provided corrective surgery is a difference of opinion from the recommendations of the

19  specialists, which is not actionable.  *Snow*, 681 F.3d at 987.  Further, it shows that, contrary to

20  Plaintiff's assertions, he was not denied treatment at every level of review of his HC Appeal on

21  the premise that surgery was pending.  While the reviews noted possible and then pending

22  surgical excision of Plaintiff's cataracts, this did not work to defer or delay treatment for

23  Plaintiff's diplopia.

24      From the above, it is also evident that Dr. Songer, as Plaintiff's PCP, referred Plaintiff to

25  specialists to treat his eye condition.  The evidence shows that Dr. Songer followed the

26  recommendations of the various specialists and there is no reason to think he should not have

27  done so.  *See Snow*, 681 F.3d at 986 (concluding that reliance on "non-specialized" medical

28  conclusions may constitute deliberate indifference to a plaintiff's medical needs); *Wakefield v.*

8

*Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999) ("[A]llegations that a prison official has ignored the instructions of a prisoner's treating physician are sufficient to state a claim for deliberate indifference."). Thus, Plaintiff's claim against Dr. Songer for deliberate indifference to his serious medical needs in violation of the Eighth Amendment is thus not cognizable and should be dismissed.

### d. Dr. Klang

Plaintiff alleges that Dr. Klang "delayed or denied plaintiff correction surgery on his right eye." Toward that end, Plaintiff claims that on January 16, 2014, Dr. Klang granted his request to see an optical surgeon for evaluation, but was deliberately indifferent because he denied Plaintiff corrective surgery at that time. (Doc. 17, pp. 3, 5.) From the HC Appeal decisions, it is evident that this action by Dr. Klang was in connection to the response to the first-level HC Appeal in which Plaintiff requested examination by an optical surgeon and eye surgery. (Doc. 36, p. 10.) In this decision, Dr. Klang noted that Plaintiff had received a number of ophthalmologist examinations and Dr. Klang granted Plaintiff's request to be seen by an eye surgeon. (*Id.*) There appears no basis for surgical intervention for Plaintiff's diplopia at that time, and Dr. Klang noted that Plaintiff had a follow-up appointment for proposed cataract surgery and glaucoma therapy. (*Id.*) Indeed, Plaintiff admits that though the orbital specialist recommended on December 9, 2013 that he be evaluated by an eye surgeon, none of the specialists up to that point had recommended surgical intervention. (*Id.*) In fact, Plaintiff alleges that the eye surgeon who evaluated Plaintiff on January 15, 2014 (the day before Dr. Klang's decision on Plaintiff's HC Appeal) did not recommend surgery, but instead recommended Plaintiff continue wearing the patch while his eye healed. (Doc. 17, p. 4.)

Dr. Klang properly deferred to the opinions and treatment recommendations of the specialists who evaluated Plaintiff. In fact if Dr. Klang, who has no apparent medical specialty, had not followed the recommendations of the eye specialists, he may very well have run afoul of the Eighth Amendment. *Snow*, 681 F.3d at 986. The SAC shows nothing more than a difference of opinion between Plaintiff and Dr. Klang (and the recommendations of the specialists that Dr. Klang followed) regarding his need, or lack thereof, for surgical repair. This is insufficient to

1    state a cognizable Eighth Amendment violation.  *Snow*, 681 F.3d at 987.

2                                **e.  Dr. Youssef**

3         Plaintiff alleges that Dr. Youssef was deliberately indifferent to his condition when he

4    "denied corrective surgery on April 29, 2014."  (Doc. 17, at pp. 3, 5.)  However, as the Chief

5    Medical Executive, it appears Dr. Youssef's involvement was limited to reviewing Plaintiff's HC

6    Appeal at the second level.  (*Id.*; Doc. 36, pp. 15-16.)  The HC Appeal shows that at the time of

7    Dr. Yousef's review, none of the specialists had recommended surgery.  (Doc. 36, pp. 15-16.)  In

8    fact, Dr. Yousef specifically noted that the ophthalmologic specialists who had seen Plaintiff

9    "would prefer to wait and avoid eye muscle surgery at this time."  (*Id.*)  Dr. Yousef also indicated

10   that it had been noted that Plaintiff desired to proceed with surgery for his cataracts on which

11   follow-up should occur in 3-4 months or as needed.  (*Id.*, p. 16.)

12        Like Dr. Klang, Dr. Youssef properly deferred to the opinions and treatment

13   recommendations of the specialists who did not recommend surgery at that time.  *Snow*, 681 F.3d

14   at 986.  The SAC shows nothing more than a difference of opinion between Plaintiff and Dr.

15   Youssef (and the specialists whose recommendations Dr. Youssef followed) regarding Plaintiff's

16   need for surgical repair of his diplopia which is insufficient for deliberate indifference under the

17   Eighth Amendment.  *Snow*, 681 F.3d at 987.

18                            **f.  Deputy Director Lewis**

19        Deputy Director Lewis signed the Director's Level review of Plaintiff's HC Appeal.

20   (Doc. 36, p. 23.)  Though not mentioned in the SAC, there is no basis to infer that Lewis has any

21   medical training.  Rather, as evidenced by her title and signature on the Director's Level of

22   Plaintiff's HC Appeal, it appears Lewis' involvement is as the non-medical administrator of

23   California Correctional Health Care Services, was to oversee the processing of the inmates'

24   health care appeals.  (*Id.*)

25        Reviewing or processing a prisoner's administrative appeal cannot serve as the basis for

26   liability under a § 1983 action.  *Buckley*, 997 F.2d at 495.  Further, this Court has found that

27   "[o]nce a [non-medical] prison grievance examiner becomes aware of potential mistreatment, the

28   Eighth Amendment does not require him or her to do more than 'review [the prisoner's]

                                         10

complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno*, 414 F.3d at 656 citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) (non-physician defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor" and if "a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.")  This Court concurs with the analysis in *Greeno* and *Spruill*.  Thus, non-medical prison personnel, such as Lewis, cannot be held liable for their mere involvement in processing of the inmate appeals especially where the inmate is under the care of not only of a PCP, but also outside specialists for the issues raised.

In the Director's Level decision, Lewis noted that much of the information referenced above, showed that Plaintiff's eye condition after the surgery was being addressed by specialists and their recommendations were being followed.  Thus, Plaintiff may not proceed against Lewis for deliberate indifference to his serious medical condition.

## C.  Claims Under California Law

Defendants argue that the claims under California law should be dismissed as well.  (Doc. 30-1, 9:5-10:2.)

### 1.  California Tort Claims Act

A plaintiff may not bring a suit for monetary damages against public employees unless he first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB"), and the VCGCB acted on the claim, or the time for doing so expired.  *Munoz v. California*, 33 Cal.App.4th 1767, 1776 (1995) ["The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity."] The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974) (citations omitted).  Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official.  *State v. Superior Court (Bodde)*, 32 Cal.4th 1234,

1  1244 (2004).  Thus, "failure to allege facts demonstrating or excusing compliance with the claim

2  presentation requirement subjects a claim against a public entity to a demurrer for failure to state

3  a cause of action."  *Id.* at 1239 (fn.omitted).

4              **2.  Complaint filing period**

5          California Government Code section 945.6 requires "any suit brought against a public

6  entity" be commenced no more than six months after the public entity rejects the claim.  Cal. Gov.

7  Code, § 945.6, subd. (a)(1). A civil action is "commenced" by filing a complaint with the court.

8  Cal. Code Civ. Proc., § 411.10.

9          Plaintiff commenced this action when he filed the complaint on September 28, 2014.  (*See*

10  Doc. 1.)  In the SAC, Plaintiff states that he filed a claim with the VCGCB on August 19, 2013,

11  which was rejected on September 27, 2013.  (*Id.*, at p. 6.)  Plaintiff filed this action a year and a

12  day after the VCGCB rejected his claim.  Thus, Plaintiff's claims under California law are

13  properly dismissed as untimely.

14  **IV.    RECOMMENDATION**

15          Based on the foregoing, the Court **RECOMMENDS** that Defendants' motion to dismiss,

16  filed on December 18, 2015 (Doc. 30), be **GRANTED** and this action be **DISMISSED**.

17          These Findings and Recommendations will be submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **21**

19  **days** after being served with these Findings and Recommendations, the parties may file written

20  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

21  Findings and Recommendations."  The parties are advised that failure to file objections within the

22  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

23  839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

24

25  IT IS SO ORDERED.

26      Dated:   __June 27, 2016__            _____/s/ Jennifer L. Thurston__
                                              UNITED STATES MAGISTRATE JUDGE

27

28

                                      12